**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN J. BREEN, )<br><br>Plaintiff, )<br><br>v. )<br><br>HERBERT L. TUCKER, et al., )<br><br>Defendants. ) | Civil Action No. 78-2222 (RBW) |

**MEMORANDUM OPINION**

I.      **Introduction.**

In 1977, the District of Columbia (the "District") terminated plaintiff John J. Breen from his temporary employment with a former agency of the District government, and then when forced to reinstate him, failed to convert the position from temporary to permanent.  Mr. Breen brought suit against the District under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, and ultimately prevailed on February 27, 1981.  The Court then ordered that Mr. Breen be reinstated into a permanent position and awarded him pay and benefits, including retirement contributions, for the period during which Mr. Breen had been unemployed.

Mr. Breen now alleges that the District failed to comply with the Court's 1981 order by not including the time during which he was unemployed in its calculation of the retirement benefits he is now entitled to and he requests that the Court hold the District in contempt.  The District makes two arguments in response:  First, the District points to the Court's denial of an earlier similar motion by Mr. Breen, claiming that, as with this first motion, the Court cannot discern what Mr. Breen claims, what relief he seeks, or whether he is entitled to whatever that relief might be.  Second, the District argues that the doctrine of laches prevents the Court from

enforcing the 29-year-old judgment due to inexcusable delay by Mr. Breen in pressing his claim and prejudice to the District if it were required to defend it. The Court disagrees with both arguments.

As to the first District argument, the 1981 order clearly requires that the District pay Mr. Breen retirement benefits for the time during which he was unemployed and Mr. Breen clearly seeks to enforce that requirement. As to the second, Mr. Breen only discovered that the order had apparently been violated when he received a letter in January of this year, and the District would face no undue prejudice by being required to explain whether and why it is allegedly failing to make proper retirement payments to Mr. Breen. The Court will not, however, hold the District in contempt, at least not yet. Instead, the Court will order the District to explain why, based on Mr. Breen's allegations, it is not in violation of the Court's 1981 order.

## II.    Mr. Breen's Efforts to Enforce the Court's 1981 Order.

Beginning in 1974, Mr. Breen, a white male, was employed by the District of Columbia Department of Environmental Services (the "Department"). February 27, 1981 Memorandum Opinion (hereinafter "Mem. Op.") at 1. Although he had previously been employed as a permanent employee by the Department in another position, his employment in 1977, as a result of a promotion, was in a temporary position that "had a not-to-exceed . . . date of August 28, 1977." *Id.* "It was the practice of the Personnel Office at [the Department]," however, "to convert qualified employees whose temporary positions were about to expire[] to permanent positions at [the Department], especially when the employee had been a permanent employee." *Id.* at 1–2.

In 1976, following an argument and physical altercation with several black coworkers, Mr. Breen was suspended and, on February 27, 1977, fired. *Id.* at 2. Mr. Breen administratively

complained that his termination was racially motivated and was awarded reinstatement. *Id.* at 2–3. However, after his temporary position ended on August 28, 1977, Mr. Breen's position was not converted to a permanent position. *Id.* at 3. Instead, the District improperly "referred to his removal in evaluating" Mr. Breen for the several vacancies to which he applied, resulting in him "not [being] selected although imminently qualified." *Id.* Mr. Breen again administratively challenged his non-selection based on racial discrimination, *id.* at 4, which eventually led to him filing two suits against the District, this case and *Breen v. District of Columbia*, No. 80-cv-709, alleging violations of Title VII of the Civil Rights Act.

The two cases were jointly tried and, on February 27, 1981, the Court rendered judgment in Mr. Breen's favor. *See* Mem. Op. The Court ordered, among other things, that the District reinstate Mr. Breen, pay him "back pay equal to the difference between his salary if he had not been discriminatorily terminated and that which he has received since August 28, 1977," the date his temporary position ended; that the District provide Mr. Breen with "all fringe benefits" to which he would have been entitled absent his discriminatory termination; and that the District pay his "reasonable attorney's fees and costs." Order, ECF No. 2-1. The Court specified that fringe benefits include, among other things, "retirement contributions." *Id.* Mr. Breen now alleges that the District "did not make such retirement contributions." Second Motion for Enforcement of Judgment (hereinafter "Pl.'s Mot.") ¶ 2, ECF No. 7.

This is not the first time that Mr. Breen has made such allegations. In March of this year, Mr. Breen filed his first motion advancing the same allegations, which the Court denied for noncompliance with several Local Rules of this Court. Order, May 11, 2010, ECF No. 5. In denying the earlier motion, the Court noted that "on the basis of the papers filed, the Court cannot discern what is at issue in the motion" and thus cannot "discern what relief the plaintiff

seeks to be enforced or . . . conclude that the relief the plaintiff seeks this Court to enforce was in fact granted" in the 1981 order.  *Id.* at 2.

The District now seizes on that language, arguing that Mr. Breen "has provided no new information in his renewed motion to satisfy the Court's concerns" and that the Court therefore cannot identify what Mr. Breen seeks or whether he is entitled to it.  Defendant District of Columbia's Memorandum in Opposition to Plaintiff's Second Motion for Enforcement of Judgment (hereinafter "Def.'s Mem.") at 2–3, ECF No. 8.  The Court disagrees.  What is at issue in the current motion is whether the District complied with the Court's 1981 order with respect to making retirement contributions on the plaintiff's behalf.  Pl.'s Mot. ¶ 1.  Mr. Breen now clearly alleges that the District has not made the contributions that it was required to make under the 1981 order.  Pl.'s Mot. ¶ 2.  As a result of the alleged failure to make the court-ordered contributions, Mr. Breen is alleging that the United States Office of Personnel Management (OPM) is not currently providing him with the appropriate amount of retirement benefits he is entitled to receive.  *See* Letter from J. Blanks, Retirement Services Program, OPM, to John J. Breen (Jan. 19, 2010), ECF No. 2-1 (hereinafter the "OPM Letter").  Mr. Breen also clearly states the relief he is seeking: that the Court hold the District in contempt for violating the order to induce the District's compliance.  *See* Pl.'s Mot ¶ 3.[1]  The Court is therefore now satisfied that

---

[1] Mr. Breen recommends a novel means by which he thinks the Court can "help the defendant's attorney have her client obey the Court's order": having the District make designated responses to specified questions submitted by the OPM.  *See* Plaintiff's Memorandum in Support of his Second Motion for Enforcement of Judgment (hereinafter "Pl.'s Mem.") at 1–2, ECF No. 7.  Although Mr. Breen offers this creative solution, the Court's contempt power is not so broad as to permit it to order, with such specificity, another party to engage in such a colloquy.

the plaintiff has adequately articulated the nature and basis for why he believes the District has

not complied with the Court's 1981 order.[2]

### III.     The Applicability of the Doctrine of Laches to Mr. Breen's Motion.

The doctrine of laches applies to a party asserting a claim on which action was not taken

with diligence and where the party opposing the claim would be prejudiced if made to defend

against it.  Here, the Court finds, for the following reasons, that Mr. Breen has pursued his claim

diligently and that the District would not be prejudiced if made to defend against it.

Accordingly, the Court will order the District to respond to the merits of Mr. Breen's allegations.

### A.     The Applicability of Laches Depends on Diligence and Prejudice.

The District of Columbia Circuit recently described the doctrine of laches as follows:

> The equitable defense of laches "is designed to promote diligence and prevent
> enforcement of stale claims" by those who have "'slumber[ed] on their rights.'"
> *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir.
> 1982) (quoting *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966)). Laches
> "applies where there is '(1) lack of diligence by the party against whom the
> defense is asserted, and (2) prejudice to the party asserting the defense.'" *Pro
> Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009) (quoting *Nat'l R.R.
> Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002)).

*Menominee Indian Tribe v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010).

Concerning lack of diligence, the Court explained:

> "[L]aches is not, like limitation, a mere matter of time," *Holmberg v. Armbrecht*,
> 327 U.S. 392, 396 (1946), but "attaches only to parties who have *unjustifiably*
> delayed in bringing suit." *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 49 (D.C. Cir.
> 2005) (per curiam) (emphasis added).  The doctrine is equitable in nature, and its
> application "turns on whether the party seeking relief 'delayed inexcusably or

---

[2] Mr. Breen additionally alleges that the retirement authority has improperly calculated his retirement benefit because the authority's records indicate an incorrect date of separation in 1985.  *See* Pl.'s Mem. at 1–2.  Mr. Breen claims that he separated on June 21, 1985, whereas OPM indicates that he separated on June 12, 1985.  *See* OPM Letter.  Because this dispute does not relate to any components of the Court's 1981 order, the Court will not address it, as this case is not the proper vehicle to challenge the accuracy of District's record concerning the date of Mr. Breen's 1985 separation.

unreasonably in filing suit,'" not simply whether the party delayed. *Id.* (quoting *Rozen v. District of Columbia*, 702 F.2d 1202, 1203 (D.C. Cir. 1983) (per curiam)).

*Menominee Indian Tribe*, 614 F.3d at 531–32.

Concerning prejudice, the Court has stated: "Two kinds of prejudice support a laches defense. Plaintiff's delay in filing suit may have resulted in a loss of evidence or witnesses supporting defendant's position or the defendant may have changed its position in a manner that would not have occurred but for plaintiff's delay." *Gull Airborne*, at 694 F.2d at 844 (citing *Concerned About Trident v. Schlesinger*, 400 F. Supp. 454, 748 (D.D.C. 1975).

## B. Mr. Breen's Diligence.

The District first argues that laches should bar Mr. Breen's motion because he did not act diligently in bringing to the Court's attention the alleged violation of the 1981 order, stating that "because [the] plaintiff has waited twenty-nine years to assert his rights to enforce the Court's order, it would be . . . unfair . . . to allow [the] plaintiff to now proceed." Def.'s Mem. at 4–5. As support for its position, the District cites several cases where laches has been applied to "much shorter periods of delay," concluding therefore that "a 29-year delay is unconscionable." *Id.* at 4. But the District fails to consider whether that delay is reasonable, justifiable, or excusable.

Mr. Breen alleges that he only discovered the violation of the 1981 order—the failure to make the ordered retirement contributions—when he received a letter on January 25, 2010, from the OPM. Plaintiff's Memorandum of Points and Authorities in Reply to the Defense of Laches ¶ 3, ECF No. 10. That letter informed Mr. Breen, allegedly for the first time, that the retirement authority had no record of his service, and thus no retirement contributions, for the time between his discriminatory firing and his

court-ordered reinstatement.  *Id.*; OPM Letter.  Far from sleeping on his rights, when Mr. Breen realized that the Court order had allegedly been violated, he promptly—within approximately one month—filed his first motion to enforce it.  *See* Motion for Enforcement of Judgment, Mar. 1, 2010, ECF No. 2.  What the District characterizes as a 29-year delay is therefore more appropriately characterized as a one-month delay, which is hardly of the duration to which laches should apply.

      **C.**    **Prejudice to the District.**

      The second argument advanced by the District is that laches should bar Mr. Breen's motion because it "would be severely prejudiced should it be made to defend this action."  Def.'s Mem. at 3.  Specifically, the District bemoans that the "agency which the plaintiff purportedly worked for has been reorganized [to the degree] that it is no longer part of the District government, thus creating the substantial likelihood that information has been lost," and that "persons working with [the] plaintiff during the time the Order was issued or those responsible for complying with the Court's Order are, more likely than not, no longer available to assist the District in its defense."  *Id.* at 3–4.  The District thus relies on the first sort of prejudice as justification for applying the doctrine of latches: the lack of evidence or witnesses to defend against the plaintiff's claim.  This argument is unpersuasive for the following reasons.

      First, the District only argues that there is a "substantial likelihood" and that it is "more likely than not" that evidence and witnesses will be unavailable to it.  The District does *not* say, however, that evidence and witnesses *are* actually unavailable.  The Court is not convinced by the District's unsupported contentions as to the mere likeliness of unavailability, made without any apparent attempt to verify actual unavailability, that laches should bar Mr. Breen's motion.

Moreover, even if the Court were certain that evidence or witnesses from 1981 are now unavailable, the District still would not be prejudiced if made to defend the merits of Mr. Breen's allegations. As the basis for paying proper benefits to retirees, the District must maintain some records concerning periods during which retirement contributions were made. In this situation, the Court ordered more than 29 years ago that the District make retirement contributions on the plaintiff's behalf for the time between his firing and his reinstatement. If today, the District fails to count these court-ordered contributions in its calculation of the plaintiff's retirement benefits, then the District is in violation of the Court's 1981 order. Whether the District made the ordered contributions and is now therefore making the proper benefits calculation, is not seemingly a question that needs to be answered by hard-to-find employees of the no-longer-extant agency from which the plaintiff was illegally discharged. It is a question for whatever agency calculated and has the responsibility for currently paying Mr. Breen's retirement. The Court finds it implausible that evidence from these sources is not available to the District.

**IV.     Conclusion.**

The Court now appreciates what Mr. Breen is alleging—that the District failed to make court-ordered contributions into his retirement annuity—and what he wants—for the District to make the required contributions so that he receives proper retirement payments. And the doctrine of laches does not forbid the Court from considering the merits of Mr. Breen's motion, because he has pursued his claim diligently and because the District would not be prejudiced by being made to defend against the relief he is seeking. However, the District has not yet provided the Court with a defense to the merits of Mr. Breen's allegations. The Court desires to consider any such defense, if the District chooses to raise one, before it rules on Mr. Breen's motion.

Therefore, in a separate order to issue this date, the Court will order the District to respond to the merits of the plaintiff's allegations.

                                                    /s/
                                                    REGGIE B. WALTON
                                                    United States District Judge

Date: January 20, 2011