UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN J. BREEN, | ) |
|     Plaintiff, | ) |
|     v. | ) Civil Action No. 78-2222 (RBW) |
| HERBERT L. TUCKER, et al., | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

**I.   Introduction.**

On February 25, 1977, the District of Columbia (the "District") terminated plaintiff John J. Breen from his temporary employment with a former agency of the District government, and then when forced to reinstate him, failed to convert the position from temporary to permanent. Mr. Breen brought suit against the District alleging racial discrimination in violation of Title VII of the Civil Rights Act and prevailed on February 27, 1981. The Court ordered the District to reinstate Mr. Breen into a permanent position and awarded him pay and benefits, including retirement contributions, for the period during which Mr. Breen had not been employed following his termination by the District.

Mr. Breen now alleges that the District failed to comply with the Court's 1981 Order by failing to make the required retirement contributions. He requests that the Court hold the District in contempt for that failure. The District makes three arguments in its most recent opposition to that motion: (1) that Mr. Breen's motion is barred by the doctrine of laches, (2) that the evidence upon which Mr. Breen relies is inadmissible hearsay, and (3) that Mr. Breen has failed to show that the District violated the 1981 Order. For the reasons discussed below, the Court disagrees

with the first argument, will assume without deciding that Mr. Breen's evidence is admissible as to the second argument, and agrees with the third argument. Mr. Breen's motion to enforce the judgment through contempt will therefore be denied.

## II.     Background and Procedural History.

Beginning in 1974, Mr. Breen, a white male, was employed by the District of Columbia Department of Environmental Services (the "Department").  Memorandum Opinion, Feb. 27, 1981, Case Number ("No.") 78-2222 ("1981 Mem. Op.") at 1, General Case Files, United Staes ("U.S.") District Court for the District of Columbia, Records of District Courts of the United States, Record Group 21, National Archives Building, Washington, D.C.[1]  In 1976, following an argument and physical altercation with several black coworkers, Mr. Breen was suspended and, on February 25, 1977, his employment was terminated.  *Id.* at 2.  Although he had previously been employed as a permanent employee by the Department in another position, his employment at the time of his termination in 1977 was, as a result of a promotion, in a temporary position that "had a not-to-exceed (NTE) date of August 28, 1977."  *Id.* at 1.

Mr. Breen administratively complained that his termination was racially motivated and was awarded reinstatement in 1978.  *Id.* at 2–3.  Although the Department technically reinstated Mr. Breen, it only did so through the NTE date of his temporary position, "claiming that the temporary position was finished."  *Id.* at 3.  "It was the practice of the Personnel Office at [the Department]," however, "to convert qualified employees whose temporary positions were about to expire[] to permanent positions at [the Department], especially when the employee had been a

---

[1] The Court cites to court documents that have been accessioned into the National Archives by reference to conventions recommended by the National Archives and Records Administration.  *See* National Archives and Records Administration, *Citing Records in the National Archives of the United States* (rev. 2010), *available at* http://www.archives.gov/ publications/general-info-leaflets/17-citing-records.pdf.

permanent employee" in the past. *Id.* at 1–2. Not only did the Department not follow that practice in Mr. Breen's case, it improperly "referred to his removal in evaluating" Mr. Breen for the several vacancies to which he later applied, resulting in him "not [being] selected although imminently qualified." *Id.* at 3. Mr. Breen administratively challenged his non-selections based on racial discrimination, *id.*, which eventually led him to file two suits against the District: this case and Civil Action No. 80-709, alleging violations of Title VII of the Civil Rights Act.

The two cases were jointly tried and, on February 27, 1981, the Court rendered judgment in Mr. Breen's favor. *See* 1981 Mem. Op. The Court ordered that the District reinstate Mr. Breen to a permanent position; pay him "back pay equal to the difference between his salary if he had not been discriminatorily terminated and that which he has received since August 28, 1977," the date his temporary position ended; provide Mr. Breen with "all fringe benefits" to which he would have been entitled but for his discriminatory termination; and pay his "reasonable attorney's fees and costs." Order, Feb. 27, 1981, Case No. 78-2222 ("1981 Order"), General Case Files, U.S. District Court for the District of Columbia, Records of District Courts of the United States, Record Group 21, National Archives Building, Washington, D.C. The Court specified that the fringe benefits it awarded included "retirement contributions." *Id.*

Mr. Breen ultimately retired on June 21, 1985. Interrogatory Response of John J. Breen to Kerslyn D. Featherstone, Assistant Attorney General, Civil Litigation Division, Office of the Attorney General for the District of Columbia (July 11, 2011) ("Interrog. Resp.") ¶ 3, ECF No. 21-1. Mr. Breen later received a form from the U.S. Office of Personnel Management ("OPM") dated October 7, 2005, which itemized his employment history but did not include Mr. Breen's employment between February 26, 1977 and July 25, 1981, *id.* ¶ 6—approximately the period for which the District was ordered to make contributions into Mr. Breen's retirement fund.

Concerned that OPM, which was serving as the retirement authority, did not appear to have a record of Mr. Breen's employment despite the 1981 Order's mandate that retirement contributions be made during the period of his discriminatory unemployment, Mr. Breen attempted to correct the omission of his employment by submitting relevant forms to OPM on November 11, 2005. *Id.* ¶ 11. Mr. Breen claims to have further pursued the matter through "[e]mails, mail[,] and phone calls through the years" thereafter. *Id.* After an apparent lack of success in remedying the omission, Mr. Breen "mailed a reminder to OPM" on July 4, 2009, *id.*, and he received a response dated January 19, 2010, in which OPM claimed that it was "unable to find documentation of [his] service from February 26, 1977 to July 25, 1981." Letter from J. Blanks, Retirement Services Program, OPM, to John J. Breen (Jan. 19, 2010) ("OPM Letter"), ECF No. 2-1.

In March 2010, Mr. Breen filed a motion to enforce the judgment in this case as well as Civil Action No. 80-709.[2] *See* Motion for Enforcement of Judgment, ECF No. 2. The Court denied that motion because, "on the basis of the papers filed, the Court [could not] discern what

---

[2] The District contends that these "two lawsuits . . . were consolidated." Opp'n at 1. Although the docket sheet for Civil Action No. 78-2222 does not indicate that a consolidation order was issued in these two cases, *see* Docket Sheet, ECF No. 1, the fact that these two cases were tried together suggests that they were consolidated, *see* Fed. R. Civ. P. 42(a)(2). Regardless, "[c]onsolidation . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'" *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933) (discussing 28 U.S.C. § 734, the predecessor statute to Rule 42(a)); *see also Ind. Pet. Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596 (D.C. Cir. 2001); *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 147–48 (D.D.C. 2002). "Rather, consolidation is a purely ministerial act which . . . relieves the parties and the Court of the burden of duplicative pleadings and Court orders," *Microsoft*, 209 F. Supp. 2d at 148, but a party should still indicate that a filing in one case should apply to all cases of a given consolidation, *see In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay*, 567 F. Supp. 2d 83, 84 (D.D.C. 2008) (providing upon consolidation of several civil actions that a given filing should still include individual case "numbers applicable to that particular filing"). The caption of Mr. Breen's second motion only identifies Civil Action No. 78-2222. Thus, this opinion applies only to that case.

is at issue in the motion" and thus could not "discern what relief the plaintiff seeks to be enforced or . . . conclude that the relief the plaintiff seeks this Court to enforce was in fact granted" in the 1981 Order. *Id.* at 2. In May 2010, Mr. Breen renewed his motion, specifically alleging that the District "did not make [the] retirement contributions" that had been ordered in 1981 and requested that the Court hold the District in contempt for violating the 1981 Order. Second Motion for Enforcement of Judgment ("Mot.") at 1, ECF No. 7.

The District opposed the second motion, arguing first that that Mr. Breen "'has provided no new information in his renewed motion to satisfy the Court's concerns' and that the Court therefore cannot identify what Mr. Breen seeks or whether he is entitled to it." *Breen v. Tucker*, 760 F. Supp. 2d 141, 143 (D.D.C. 2011) (quoting Defendant District of Columbia's Memorandum in Opposition to Plaintiff's Second Motion for Enforcement of Judgment at 2–3, ECF No. 8). The Court disagreed, concluding that "Mr. Breen is alleging that the United States Office of Personnel Management (OPM) is not currently providing him with the appropriate amount of retirement benefits he is entitled to receive" because the District failed to make contributions required by the 1981 Order, and that "Mr. Breen also clearly states the relief he is seeking: that the Court hold the District in contempt for violating the order to induce the District's compliance." *Id.* The District also argued that Mr. Breen's motion was barred by the doctrine of laches because he was not diligent in pressing his claims and because the District would be prejudiced if made to defend against accusations that it violated what was then a 29-year-old judgment. *Id.* at 144. The Court disagreed, concluding that Mr. Breen had been diligent, filing his original enforcement motion only approximately one month after receipt of the January 19, 2010 letter from OPM, and that the District would not be unduly prejudiced because, despite the passage of time, the Court found it "implausible that evidence . . . is not available" to

allow the District to make its defense. *Id.* at 144–45. The Court thus ordered the District to respond to the merits of Mr. Breen's allegations, *id.* at 146, but also permitted the District to engage in limited discovery before submitting its response, *see* Memorandum Opinion and Order, ECF No. 19.

The District has now filed that response, in which it advances three arguments. *See* Defendant District of Columbia's Opposition to Plaintiff's Second Motion to Enforcement of Judgment ("Opp'n"), ECF No. 21. First, the District again argues that Mr. Breen's motion is barred by the doctrine of laches. *Id.* at 5–7. Because the Court has previously decided that the motion is not barred by laches, the Court construes this portion of the District's motion as a request for reconsideration based on new evidence. Such new evidence consists of documents showing Mr. Breen's knowledge of the discrepancy in OPM's records and his attempts to remedy that discrepancy prior to his receipt of the January 19, 2010 letter from OPM: the October 7, 2005 form that Mr. Breen received from OPM; the November 11, 2005 submissions by Mr. Breen to OPM; and Mr. Breen's follow-up communications, including a July 4, 2009 letter to OPM. This new evidence, however, does not change the Court's conclusions that Mr. Breen acted with due diligence or that the District would not be unduly prejudiced if made to defend against the merits of Mr. Breen's allegations.

The District's second argument is that the January 19, 2010 letter from OPM upon which Mr. Breen relies is inadmissible hearsay. *Id.* at 4. The Court need not decide whether the letter is hearsay, but will instead assume that it is admissible, because even with that assumption made, Mr. Breen has failed to show that the District violated the 1981 Order.

Finally, the District argues that Mr. Breen has failed to show that the District violated the 1981 Order. *Id.* at 3–5. The Court agrees. The January 19, 2010 letter from OPM does not

6

convincingly imply that the District failed to make the proper retirement contributions; moreover, the District has since corrected Mr. Breen's employment history with OPM, ensuring the proper calculation of his retirement benefits. Mr. Breen has also provided evidence implying that proper retirement contributions were, in fact, paid. Mr. Breen has therefore not shown that the District violated the 1981 Order, and his motion to enforce the judgment through contempt must therefore be denied.

**III.    Analysis.**

**A.    Mr. Breen's Motion Is Not Barred by the Doctrine of Laches.**

The District first argues that Mr. Breen's motion is barred by the doctrine of laches. The Court has previously decided that the motion is not so barred. The District thus seeks reconsideration of that decision based on new evidence produced during discovery. That new evidence, however, does not change the Court's conclusion that laches does not bar consideration of Mr. Breen's motion.

**1.    The Applicability of Laches Depends on Diligence and Prejudice.**

The District of Columbia Circuit recently described the doctrine of laches as follows:

> The equitable defense of laches "is designed to promote diligence and prevent enforcement of stale claims" by those who have "'slumber[ed] on their rights.'" *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982) (quoting *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966)). Laches "applies where there is '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Pro Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002)).

*Menominee Indian Tribe v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010). Concerning lack of diligence, the Circuit explained:

> "[L]aches is not, like limitation, a mere matter of time," *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946), but "attaches only to parties who have *unjustifiably* delayed in bringing suit." *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 49 (D.C. Cir.

7

> 2005) (per curiam) (emphasis added). The doctrine is equitable in nature, and its application "turns on whether the party seeking relief 'delayed inexcusably or unreasonably in filing suit,'" not simply whether the party delayed. *Id.* (quoting *Rozen v. District of Columbia*, 702 F.2d 1202, 1203 (D.C. Cir. 1983) (per curiam)).

*Menominee Indian Tribe*, 614 F.3d at 531–32. Concerning prejudice, the Circuit has stated: "Two kinds of prejudice support a laches defense. Plaintiff's delay in filing suit may have resulted in a loss of evidence or witnesses supporting defendant's position or the defendant may have changed its position in a manner that would not have occurred but for plaintiff's delay." *Gull Airborne*, at 694 F.2d at 844 (citing *Concerned About Trident v. Schlesinger*, 400 F. Supp. 454, 748 (D.D.C. 1975).

### 2. The Court Construes the District's Argument as a Request for Reconsideration, Which Will Be Denied.

The District argues that Mr. Breen's motion is barred by the doctrine of laches. Opp'n at 5–7. As noted earlier, the Court has previously decided that Mr. Breen's motion is not so barred. *Breen*, 760 F. Supp. 2d at 144–45. The Court therefore construes the District's argument as a request for partial reconsideration of that decision. The standard applicable to a motion for reconsideration depends on whether the decision to be reconsidered is final or interlocutory. *Compare* Fed. R. Civ. P. 54(a) *with* Fed. R. Civ. P. 59(e), 60(b). A decision on a postjudgment contempt motion, such as the one at issue here, will itself be considered final, as opposed to interlocutory, despite the fact that the case in which such a motion is made would have already been finally decided, "so long as the district court has completely disposed of the matter." *Gen. Ins. Co. of Am. v. E. Consol. Utils., Inc.*, 126 F.3d 215, 218 (3d Cir. 1997). The Court did not completely dispose of the matter when it decided that Mr. Breen's motion was not barred by the doctrine of laches, but rather ordered the District to further address the merits of that motion.

*Been*, 760 F. Supp. 2d at 146.  Therefore, the decision the District seeks to have the Court reconsider was interlocutory.

"In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.,* 217 F.R.D. 235, 237 (D.D.C. 2003)).  Here, the District relies on the discovery of new evidence.  Opp'n at 5.  When the Court originally decided that Mr. Breen's motion was not barred by the doctrine of laches, the Court knew only of the January 19, 2010 letter from OPM.  The Court found "[t]hat [the] letter informed Mr. Breen, allegedly for the first time, that the retirement authority had no record of his service, and thus no retirement contributions, for the time between his discriminatory firing and his court-ordered reinstatement." *Breen*, 760 F. Supp. 2d at 145.  From that finding, the Court reasoned that Mr. Breen had diligently sought to enforce the judgment by filing his first enforcement motion within approximately one month of receiving that letter.  *Id.*  The Court also found it "implausible that evidence" concerning contributions to Mr. Breen's retirement account "is not available to the District" because "the District must maintain some records concerning periods during which retirement contributions were made." *Id.*

Through discovery, several new pieces of evidence have come to light, including the October 7, 2005 form that Mr. Breen received from OPM; the November 11, 2005 submissions by Mr. Breen to OPM; and Mr. Breen's follow-up communications, including a July 4, 2009 letter to OPM.  *See* Interrog. Resp. ¶¶ 6, 11.  It is now clear from these documents that Mr. Breen first learned on October 7, 2005, that OPM was missing information concerning his employment

9

from the period of February 26, 1977 to July 25, 1981. *Id.* ¶ 6. Mr. Breen thus had knowledge that the District might have violated the 1981 Order over four years before he received the January 19, 2010 letter from OPM. The District contends that Mr. Breen's over-four-year delay was unreasonable. Opp'n at 6. The Court disagrees. Although the new evidence shows a longer delay than the one-month delay about which the Court was originally aware, that longer delay is not unreasonable. Throughout those four years, Mr. Breen diligently attempted to remedy the omission from his records without court intervention. Only after these efforts proved unsuccessful did Mr. Breen resort to legal recourse. The Court will not apply the doctrine of laches in a way that would punish Mr. Breen for first diligently trying to resolve this matter without judicial intervention.

The District also argues that despite being granted several extensions of time and recourse to discovery, "it was unable to locate documentation that further supports its defense." *Id.* at 6. The district thus argues that "it is unduly prejudiced in this action." *Id.* Again, the Court disagrees. As discussed more fully below, the evidence that has been produced is sufficient to show that Mr. Breen should not prevail on his motion. Accordingly, the District does not face undue prejudice in defending against the merits of Mr. Breen's motion with only the evidence that has been produced. Because, even based on the new evidence before the Court, Mr. Breen has been diligent and the District would not be unduly prejudiced, the Court declines to reconsider its conclusion that Mr. Breen's motion is not barred by the doctrine of laches.

> **B.     The Court Will Assume that the January 19, 2010 Letter from OPM May Be Considered as Admissible Evidence.**

The District argues that the January 19, 2010 letter from OPM "is inadmissible hearsay." Opp'n at 4. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid.

10

801(c).  A statement can be a "written assertion," such as a letter.  Fed. R. Evid. 801(a)(1).  Mr. Breen has offered the letter he received from OPM to prove the truth of the statement made in the letter that OPM "was unable to find documentation of the service from February 26, 1977 to July 25, 1981," OPM Letter, which is approximately the period for which the District was ordered to make contributions into Mr. Breen's retirement fund.  Mr. Breen asks the Court to infer, based on the truth of the letter's content, that the District failed to make court-ordered retirement contributions.  Mot. at 1.  The District responds that the letter is inadmissible, and that without it, Mr. Breen has no evidence to support his contention that the District violated the 1981 Order.  Opp'n at 4.

Mr. Breen retorts that the letter is admissible because the declaration of Jaininne Edwards, who is a Pension Benefits Officer of the District of Columbia Office of Pay and Retirement Services, "confirms the facts" stated in the letter.  Reply at 1; *see* Declaration of Jaininne Edwards ("Edwards Decl") ¶ 1, ECF No. 21-2.  Mr. Breen is incorrect.  Although Ms. Edwards' declaration references the existence of "representations from OPM that it has no record that it received an [individual retirement record] for [Mr. Breen] that reflected his employment from February 25, 1977 through July 25, 2981," the mere acknowledgments that such representations have been made does not confirm the *truth* of the matters represented or otherwise establish the admissibility of the statement.  Edwards Decl. ¶ 3.  Regardless, the Court need not decide now whether the letter is admissible; the Court will simply assume that it is, because even with that assumption, and even assuming the truth of the matter asserted in the letter, Mr. Breen nonetheless has failed to show, for the reasons discussed below, that the District violated the 1981 Order.

### C. Mr. Breen Has Not Shown that the District Failed to Comply with the Judgment.

Mr. Breen alleges that the District "did not make" the retirement contributions it was required to make under the 1981 Order. Mot. at 1. He therefore asks that the District "be held in contempt" under Federal Rule of Civil Procedure 70(e). *Id.* That rule provides that when a party disobeys a lawful order, a district court "may . . . hold the disobedient party in contempt." Fed. R. Civ. P. 70(e). Thus, a party may be held in civil contempt "to compel compliance with an order of the court" or to "'compensate[] the complainant for losses sustained'" as a result of such noncompliance. *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003) (quoting *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994)). "By contrast, criminal contempt is used to punish, that is, to 'vindicate the authority of the court' following a transgression rather than to compel future compliance or to aid the plaintiff." *Id.* (quoting *Bagwell*, 512 U.S. at 829). From the title of Mr. Breen's motion—"Second Motion for *Enforcement* of Judgment"—and his citation to Rule 70(e), it is clear that Mr. Breen seeks the imposition of civil, not criminal, contempt. Mot. at 1 (emphasis added).

A Court may "hold an individual in civil contempt only if the putative contemnor has violated an order that is clear and unambiguous, and [only if] the complainant proves the violation by clear and convincing evidence." *S.E.C. v. Bilzerian*, 729 F.Supp.2d 1, 4 (D.D.C. 2010) (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006)). "'In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred.'" *Id.* (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)). Mr. Breen has not met his burden of proof.

Mr. Breen points to the January 19, 2010 letter from OPM, which indicates that it "was unable to find documentation of [his] service from February 26, 1977 to July 25, 1981." OPM

12

Letter, *cited in* Mot. at 1.  As noted already, this time period approximately spans the dates when the District was ordered to make contributions into Mr. Breen's retirement fund.  *See* 1981 Mem. Op.; 1981 Order.  Mr. Breen then seeks to have the Court infer from this evidence that because OPM does not have a record of his employment for that period, the District must not have made retirement contributions for that period on his behalf.  Mot. at 1.  As the District points out, however, the letter does not necessarily support such an inference.  Opp'n at 4 ("[I]t does not affirmatively state that no benefits were paid . . . for that period.").  The Court agrees.  Simply because OPM does not have a record of Mr. Breen's employment for a particular period does not mean that the District did not make court-ordered retirement contributions for that period. Moreover, the OPM letter stated that OPM needed verification of Mr. Breen's employment during the period at issue.  OPM Letter.  Such verification was provided to OPM by the District on May 9, 2011.  Edwards Decl. ¶¶ 4–5; Notice of Corrected Individual Retirement Record (May 9, 2011), ECF No. 22-1 ("[T]he Individual Retirement Records now on file with OPM indicate continuous employment from the period 4-26-71 through 6-12-85.").  Therefore, to whatever extent the OPM letter implied that the District had failed to make the proper retirement contributions, any such implication has been nullified by the information now provided by the District concerning Mr. Breen's tenure as a District employee.

Furthermore, Mr. Breen himself has provided evidence that the District did, in fact, make the contributions required by the 1981 Order.  Mr. Breen attached to his opposition to the District's motion for leave to engage in discovery two documents that he received from the District.  The first, a "Voucher for Miscellaneous Payments" dated May 18, 1979, calculates retirement contributions made from February 26, 1977 through August 27, 1977.  Voucher for Miscellaneous Payments (May 18, 1977), ECF No. 17; Interrog. Resp. ¶ 11.  The second, an

untitled and undated worksheet, calculates retirement contributions made from August 28, 1977, through July 25, 1981.  Untitled Worksheet (n.d.), ECF No. 17; Interrog. Resp. ¶ 11.  Together, these documents show that the District calculated Mr. Breen's retirement contributions for the period at issue.  It is reasonable to assume, then, that the District made the contributions it calculated, Opp'n at 5 ("These documents reflect that the District took steps to comply with the Court's order."), particularly considering that Mr. Breen has not presented sufficient evidence to prove otherwise.

## IV.  Conclusion.

For the reasons discussed above, consideration of Mr. Breen's motion is not barred by the doctrine of laches.  Additionally, the Court assumes, for the purpose of resolving Mr. Breen's motion, that the January 19, 2010 OPM letter is admissible.  However, because that letter does not support the inference that the District failed to comply with the 1981 Order and because other evidence suggests that the District did comply with the 1981 Order, Mr. Breen's motion to enforce the judgment through contempt will be denied.  The Court previously entered a non-final order on September 28, 2011 denying Mr. Breen's motion and administratively closing this case.  *See* Order, ECF No. 24.  With this Memorandum Opinion and the accompanying Order to issue this date, the Court enters its final and appealable judgment.

DATE: November 4, 2011                                                /s/_____
                                                                                            REGGIE B. WALTON
                                                                                            United States District Judge